IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 8, 2020

## STATE OF TENNESSEE v. ISAIAH WILLIAMS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 17-00459      John W. Campbell, Judge**

_____

### No. W2019-01885-CCA-R3-CD

_____

A jury convicted the Defendant, Isaiah Williams, of attempted second degree murder and employing a firearm during the commission of a dangerous felony. The trial court sentenced him to an effective sentence of seventeen years of incarceration. On appeal, the Defendant contends that the evidence presented is insufficient to establish his identity as the shooter. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and J. ROSS DYER, J., joined.

Phyllis Aluko, Public Defender and Harry E. Sayle, III, Assistant Public Defender, Memphis, Tennessee, for the appellant, Isaiah Williams.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and G. Kirby May and William N. Muller, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from a shooting that occurred on August 24, 2016. For this shooting, a Shelby County grand jury indicted the Defendant, Isaiah Williams, for attempted first degree premeditated murder, attempted first degree felony murder, and for employing a firearm during the commission of a dangerous felony. At the Defendant's trial, the parties presented the following evidence:[1] Leroy Williamson, an officer with

_____

[1] As the only issue raised by the Defendant is the sufficiency of the evidence of his identity as the shooter, we will more succinctly summarize the facts presented at trial.

the Memphis Police Department ("MPD"), testified that he was called to the Fox Hollow Apartments at around 8 p.m. on August 25, 2016, to investigate a shooting. When Officer Williamson arrived, he saw people standing near the victim, who was laying, face down, in a grassy area inside the complex. The victim, Oliver Toe, had several gunshot wounds to his body, and Officer Williamson saw gunshot wounds in both his right and left leg. The victim was responsive and, while in obvious pain, communicated with the officer.

In relation to this shooting, Memphis Police Department officers were looking for a suspect described as "black" man who went by the name "AR," and who was wearing a white T-shirt and blue jeans.

During cross-examination, Officer Williamson testified that, in his report, he indicated that the identity of the shooter was "unknown." He said, however, that the victim had given him a name of the shooter. He agreed that the area where the shooting occurred was dark and estimated that, without assistance, someone could only see twenty-five or thirty feet. In the area near the victim, the officer saw shoes, a cell phone, and shell casings. He did not see any car keys. Officer Williamson said that his report listed possible suspects as "AR" and "Raymond Wilson," whose address he also listed. He said that he had not spoken with any other witnesses aside from the victim at the time that he created the report.

During redirect examination, Officer Williamson testified that he listed the suspects as "unknown" in the report because he was not able to identify the suspects. He said, "all suspects are listed as unknown unless we can identify them through various systems that we use." Officer Williamson said that his report indicated that AR, who was the victim's neighbor, shot the victim because of an altercation resulting from the victim's brother allegedly "looking at" AR's wife.

Paramedics testified that they responded to the scene of this shooting where they found the victim laying on his back. They moved him to a stretcher and into the ambulance to treat him. Paramedic John White testified that the victim, who was in very critical condition having multiple gunshot wounds, spoke "broken English" but said that his neighbor had shot him. The victim said that his brother and the neighbor had gotten "into it," and he was trying to defuse the situation when he was shot.

Officer Tristan Brown, a member of the MPD Crime Scene Unit, testified that he assisted in this investigation. When he arrived at the crime scene, there were approximately five or six officers present, and Officer Brown began taking photographs. He also created a crime scene diagram, which the trial court admitted into evidence. He found at the scene .45 caliber shell casings, gym shoes, and a cell phone.

The victim testified that he was from Liberia West Africa and had moved to Memphis in 2005. He had lived in the Fox Hollow community since 2014 and had lived there for the two years leading to the shooting; as such he was familiar with his neighbors. The victim said that he lived in the townhome with his girlfriend and that his brothers, Yundi and Vissilan, sometimes stayed with them. He said that the Defendant, whom he knew as "AR," lived in the townhouse next to his with the Defendant's wife and children. The two became friends and their children sometimes played together.

The victim described the events leading to the shooting, saying that Vissilan had come to stay with him, the two were leaving the townhouse on August 24, 2016, so Vissilan could drive the victim to a court date. When the victim opened his car door, he noticed that the Defendant and his wife were pulling into their carport. The Defendant approached Vissilan and asked him, "do you know this woman," pointing to the Defendant's wife. The victim asked the Defendant what was going on, and the Defendant called his wife over. The Defendant explained that his wife said that Vissilan had been looking at her "some type of way." The victim said that he told the Defendant he apologized if his brother had offended the Defendant or the Defendant's wife, and explained that he and Vissilan had to leave because of the victim's court date, which was four hours away. He assured the Defendant that it would not happen again. The Defendant and his wife went inside, and the victim and his brother got into their car and left.

The victim said that, the following day, at around 5:30 p.m., he was outside smoking, drinking, and using his laptop when he saw the Defendant, on foot, coming from across the street. The victim said that he greeted the Defendant, who brandished a pistol. The victim said that he panicked, and the Defendant told him not to worry. The Defendant then asked about the whereabouts of Vissilan. The victim said that Vissilan was not at the house and asked the Defendant if he was still upset about yesterday. The Defendant came closer to the victim and told the victim to go to the Defendant's house. The victim said that he was scared, so he swung his laptop toward the Defendant's hand holding the gun and ran away.

The victim said that the Defendant shot him in the back of the leg as he was running away. The Defendant then chased after him and repeatedly shot him. The Defendant shot the victim eight times in total. The victim said that as the Defendant got closer to him, he attempted to "tussel with him" and get the gun from his hand. The victim said that he was lying on his back on the ground, and the Defendant stood over him and kept shooting him. The Defendant grabbed the victim's shirt and attempted to drag him somewhere. The victim could not stand because both of his legs had been shot.

- 3 -

The Defendant did not stop shooting him until he ran out of bullets. The Defendant left, walking back in the same direction from which he had come.

The victim said that he was aided by a young man and that the police and paramedics then arrived. The victim said the he told the man who was reviving him that his neighbor, "AR," had shot him. The victim testified about his extensive injuries, surgeries, and lengthy hospital stay. Police brought a photographic lineup to the hospital, and the victim identified the Defendant's picture as being of the shooter.

During cross-examination, the victim testified that Vissilan was in his apartment on the day that he was shot. The victim agreed that at the time that he was shot he had consumed two or three beers and also used cocaine. The victim said that, as the Defendant approached him before shooting him, the victim was sitting in an abandoned car on the side of his building looking at his laptop. The victim said that his car was stolen on August 25, 2016, the day of this shooting.

The treating physician testified that the victim had been shot multiple times and had life-threatening injuries. He described the victim's injuries, including ten bullet wounds, and the treatment for those injuries.

Detective Jamal Saulsberry testified that he participated in the investigation of this case. He said that he spoke with neighbors in an attempt to locate the man that the victim had identified as the shooter, his neighbor "AR." The detective was unable to locate any witnesses of the shooting, but he submitted the spent shell casings and bullets officers found at the scene to the Tennessee Bureau of Investigation. After speaking with the victim in the hospital, the detective created a photographic lineup to show the victim. The victim identified the Defendant's picture as the person that shot him.

Cervinia Braswell, with the Tennessee Bureau of Investigation, testified that she examined the bullets recovered from the scene and the one recovered from the victim's body. They all appeared to have been fired from a Hi-Point .45 caliber handgun.

Based upon this evidence, the jury convicted the Defendant of attempted second degree murder and of employing a firearm during the commission of a dangerous felony. The trial court sentenced the Defendant to eleven years for the attempted second degree murder conviction and to six years for the firearms conviction. The trial court ordered that the sentences run consecutively, for a total effective sentence of seventeen years.

It is from these judgments that the Defendant now appeals.

## II. Analysis

- 4 -

On appeal, the Defendant contends that the evidence is insufficient to establish his identity as the shooter in this case. The State counters that there was sufficient evidence from which a reasonable jury could find that the State proved the Defendant's identity beyond a reasonable doubt. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary

> instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

The Defendant contends that the evidence is insufficient to prove his identity as the shooter. He contends that the victim was not a credible witness, having consumed alcohol and cocaine, and that it was dark at the time of the shooting. "The identity of the perpetrator is an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citing *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975)). Whether the State has established the defendant as the perpetrator of the charged offenses beyond a reasonable doubt is "a question of fact for the jury upon its consideration of all competent proof." *State v. Bell*, 512 S.W.3d 167, 198 (Tenn. 2015 (citing *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005)); *accord State v. Crawford*, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982) (citing *Stubbs v. State*, 393 S.W.2d 150, 153 (Tenn. 1965)).

It is "well settled in Tennessee that the testimony of a victim, by itself, is sufficient to support a conviction." *State v. Bonds*, 189 S.W.3d 249, 256 (Tenn. Crim. App. 2005) (citation omitted). Further, as previously stated, questions of witness credibility and all factual issues are resolved by the jury. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In this case, the evidence viewed in the light most favorable to the State proves that the Defendant angrily approached the victim and his brother about how the victim's brother spoke to the Defendant's wife. A day later, the Defendant approached the victim, and asked the whereabouts of his brother while brandishing a weapon. The victim said he did not know, and the Defendant told the victim to accompany him into his house. The victim, scared, hit the Defendant with his laptop and ran, and the Defendant shot him in the back of the legs and in the back while he was fleeing. The Defendant then approached the victim and attempted to drag him somewhere, but eventually left. The victim gave first responders the name "AR" as being the name of his shooter. The Defendant's "street name" was "AR." The victim identified the Defendant in a photographic lineup. We conclude that the evidence sufficiently supports the jury's

determination that the Defendant was beyond a reasonable doubt the shooter in this case. The Defendant is not entitled to relief on this issue.

## II. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE